**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 8, 2014**

# In the Court of Appeals of Georgia

A14A0660. THE REVOCABLE TRUST OF TIMOTHY W. GRIFFIN, et al. v. TIMBERLANDS HOLDING COMPANY ATLANTIC, INC.

RAY, Judge.

The Revocable Trust of Timothy W. Griffin and Timothy W. Griffin, individually and as trustee of the aforementioned trust (collectively "Griffin"), appeal the trial court's grant of summary judgment upholding Timberlands Holding Company Atlantic, Inc.'s ("Timberlands") claim of prescriptive easement over Griffin's property. Asserting error, Griffin appeals. For the reasons that follow, we reverse.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. The movant has

the original burden of making this showing. Once the movant has made a prima facie showing that it is entitled to judgment as a matter of law, the burden shifts to the respondent to come forward with rebuttal evidence. In rebutting this prima facie case, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in OCGA § 9-11-56, must set forth specific facts showing that there is a genuine issue for trial. A defendant may meet its burden on a motion for summary judgment by showing the court that the documents, affidavits, depositions, and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. Our review is de novo, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citations, punctuation, and emphasis omitted.) *Glatfelter v. Delta Air Lines*, 253 Ga. App. 251, 252 (2) (558 SE2d 793) (2002).

The evidence shows that Griffin bought an approximately 91-acre tract of land in Wilcox County from Jesus Brito in October 2011. Timberlands and its predecessor, Rayonier Forest Resources, L. P., had been using an access road that runs east-west across the tract for some years. After purchasing the tract, however, Griffin erected a gate and communicated that access along the road would not be permitted.

2

Timberlands' predecessor[1] sued Griffin claiming a prescriptive easement, then moved for summary judgment. After a hearing, which was not transcribed,[2] the superior court granted Timberlands' motion for summary judgment and Griffin appeals.

> Prescriptive rights are to be strictly construed, and the prescriber must give some notice, actual or constructive, to the landowner he intends to prescribe against. OCGA § 44-9-54 provides that a private way, that is, "a right of ingress and egress over the land of another," may be established by prescription in the following manner: Whenever a private way has been in constant and uninterrupted use for seven or more years and no legal steps have been taken to abolish it, it shall not be lawful for anyone to interfere with that private way. In order to establish a private way by prescription, the petitioner must also show *that the private way did not exceed 20 feet in width*, that the use continued along the same route without shifting from one path to another, and that the prescriber kept the way open and in repair during the period of prescription. If the prescriber fails to show any of these elements necessary to establish prescriptive title, he cannot recover.

---

[1] Although Rayonier filed the initial suit, Timberlands later was substituted as plaintiff.

[2] The trial court denied Griffin's motion to approve a transcript by recollection. The hearing at issue was not an evidentiary hearing.

(Punctuation and footnotes omitted; emphasis supplied.) *Yawn v. Norfolk Southern R. Co.*, 307 Ga. App. 849, 851-852 (2) (706 SE2d 197) (2011). In addition to showing that the private way does not exceed twenty feet in width, the prescriber also must show "that it is the same twenty feet originally appropriated." (Footnote omitted.) *Moody v. Degges*, 258 Ga. App. 135, 137 (573 SE2d 93) (2002).

1. Griffin argues that the trial court erred in its determinations related to the width of the private way.

OCGA § 44-9-40 (a) provides, in pertinent part, that

[t]he superior court shall have jurisdiction to grant private ways to individuals to go from and return to their property and places of business. Private ways *shall not exceed 20 feet in width* and may be as much less as the applicant may choose or as the court may find to be reasonably necessary.

(Emphasis supplied.) "[T]he private way could not exceed . . . twenty feet in width[.] . . . [T]he burden is on the prescriber to show that it *did not exceed the width permitted*." (Citations omitted; emphasis supplied.) *Bedingfield v. McCullough*, 106 Ga. App. 759, 760 (128 SE2d 374) (1962). See also *Yawn*, supra.

(a) First, Griffin contends that the trial court made a factual error when it determined that Timberlands provided evidence that the access road "did not exceed

4

twenty feet in width during the prescriptive period." Specifically, Griffin asserts that the evidence supplied by Timberlands shows merely that the *prescriptive use* of the roadway – rather than the *actual width of the road* itself – was 20 feet or less. [3] We agree.

In its complaint, Timberlands seeks a 20-foot-wide easement, which OCGA § 44-9-40 gives the superior court jurisdiction to grant provided the other elements of a prescriptive easement are met. However, Timberlands has presented evidence only as to the width of its use, not as to the width of the roadway.

Timberlands offered evidence in the form of an affidavit from Chad Lamb, a resource land manager for Timberlands' predecessor, Rayonier, that "From early 2000 through mid-2011 Rayonier's *use* of the Access Road continued along this same path

---

[3] Griffin also argues that there is conflicting evidence in the form of an affidavit from Timothy Griffin that the roadway is wider than the statutory maximum of 20 feet. However, Griffin's affidavit was subscribed on September 26, 2013 , well after the prescriptive period at issue here, which runs from 2000 to mid-2011. His affidavit makes no mention of the date on which he attests that the roadway exceeded 20 feet in width. In an earlier affidavit, he subscribed on July 17, 2013, Griffin stated that "No person, agent or employee of [Timberlands] or *anyone else* ever indicated to me the *existence* of an access road across my property." (Emphasis supplied.) Given that Timothy Griffin was unaware that an access road existed as of the date of this earlier affidavit, which also post-dates the prescriptive period, even viewing this evidence in the light most favorable to Griffin as the nonmovant, he cannot have had knowledge of the roadway's width during the prescriptive period. The affidavit presents no fact question.

5

of less than 20 feet in width without shifting." (Emphasis supplied.) The prior owner, Brito, stated in an affidavit that Rayonier and its predecessor "adversely *used* the same twenty (20) feet of access road[.]" (Emphasis supplied.) Also, Clifton McCranie, a crewman for Rayonier, stated in an affidavit that he worked for Rayonier from 1971 to 2009; that he performed repairs on the access road; and that he was "familiar with the Rayonier property illustrated" in a survey dated August 20, 2012. This survey delineates the access road's width as 20 feet, but the survey post-dates the prescriptive period. McCranie's affidavit does not state whether he is "familiar" with the road as it appeared during the prescriptive period or at the time the survey was made. Timberlands urges us to use McCranie's affidavit to infer that this later survey indubitably represents the width of the roadway during the prescriptive period. We cannot make such an inference on Timberlands' motion for summary judgment, however, as we must view all reasonable inferences in favor of Griffin as the nonmovant. *Glatfelter*, supra. Thus, Timberlands has failed to show the width of the roadway and has failed to meet one of the required elements to show a prescriptive easement. *Yawn*, supra. McCranie's affidavit and the accompanying survey present a fact question for the jury.

(b) Griffin contends that the trial court made a legal error when it determined that Timberlands' showing that "*use* of the Access Road continued along the same path of twenty feet or less" (emphasis supplied), satisfied the width requirement for a prescriptive easement. Griffin contends that the width of the *actual roadway*, not the width of use, is the determinative factor. We agree.

Our Supreme Court decided *Church v. York*, 212 Ga. 135, 135-136 (91 SE2d 9) (1956) based on the width of the roadway. The predecessor statute to OCGA § 44-9-40 (a) at issue in *Church* required that a private way not exceed 15 feet in width.[4] In *Church*, our high court recognized that where a party sought a prescriptive easement over a "right of way [that] is over 15 feet in width, and at some places approximately 30 feet in width[,]" because "[t]he evidence shows without dispute that the relocated way is at some places more than 15 feet in width, and is therefore insufficient to show a prescriptive right of way." Id. at 135-136. It is clear that the Supreme Court based its ruling not on width of use, but on the width of the roadway.

---

[4] Ga. L. 1953, Nov. Sess., p. 98, amended Code § 83-102 (now OCGA § 44-9-40) to provide that the width of a private way not exceed 20 feet. See *Rothberg v. Peachtree Investments, Inc.*, 220 Ga. 776, 780 (1) (142 SE2d 264) (1965).

In *Warner v. Brown*, 290 Ga. App. 510, 515-516 (3) (659 SE2d 885) (2008), this Court determined that, given deeds of conveyance, surveys, and agreement of the parties that a particular roadway was 30 feet wide, where

> the record makes clear that the *Roadway* exceeds the 20-foot maximum width allowed for the creation of a private right of way . . . and the [prescribers] have introduced no evidence showing that the width is instead 20 feet or less[,] . . . the record establishes that the *Roadway* is too wide to function as a private right of way.

(Emphasis supplied.) Timberlands argues that *Warner* is distinguishable because the prescribers sought a 30-foot easement, in excess of what the statute allows. Pretermitting whether this is so, see id. at 511, the language from *Warner* quoted above clearly shows that the Court rendered its decision not on the width sought, but on the width of the roadway. Id. at 516 (3). Griffin's attempt to distinguish *Warner* is unavailing. We note that this Court has also determined that "the mere existence of a few wider places will not defeat the right of the users." (Citation and punctuation omitted). *Jackson v. Norfolk Southern R.*, 255 Ga. App. 695, 697 (1) (566 SE2d 415) (2002)[5].

---

[5] While we recognize the inherent tension between cases seemingly applying a strict limitation to the 20 foot (formerly 15 foot) width and those cases allowing small and/or limited deviations, we do not concern ourselves with reconciling those

Clearly, use is a factor in the overall analysis of whether a prescriptive easement exists. For example, *Keng v. Franklin*, 267 Ga. 472, 472 (480 SE2d 25) (1997), in discussing the other elements of a prescriptive easement, provides not only that "a successful prescriber must show that the *private way did not exceed 20 feet in width*" but also that "the *use continued along the same route* without shifting from one path to another[.]" (Citation omitted; emphasis supplied.) However, regardless of the other elements a prescriber must show – and any inevitable overlap between those elements – we see no authority absolving the prescriber from proving the width of the roadway. In sum, because Timberlands failed to make the required showing as to the width of the roadway, summary judgment was inappropriate in this case.

2. Griffin next argues that the trial court erred in granting the motion for summary judgment where there was conflicting evidence as to whether Timberlands' use shifted from one path to another. We agree.

Griffin cites to the testimony of Allen Davidson, who used the access road for hunting. Davidson deposed that the road contained deep holes and that it "*changed from time to time in width* because as the holes developed, rather than fill the holes

---

cases since there is no evidence here as to the width of the road, only to the width of the part which is used.

9

and repair the road, they (the user) would *drive around the holes and make the road wider*." (Emphasis supplied.)

To establish a prescriptive easement, "[t]he location of the way must not shift from place to place as to any part of the route, but the way must occupy the same ground all the while and be kept in repair on that ground." (Citation and punctuation omitted.) *Thompson v. McDougal*, 248 Ga. App. 270, 272 (546 SE2d 44) (2001). The *Thompson* court found a fact question defeating summary judgment where the location of the way had changed. Id.

In *Follendore v. Thomas*, 93 Ga. 300 (20 SE 329) (1894), the Supreme Court of Georgia found, pursuant to the earlier 15-foot width requirement, that a road's shifting via "turnouts" to avoid bad road conditions defeated a prescriptive easement where, even though "[t]he width of the road would not average more than 15 feet, but at some places, on account of the turnouts, the road was more than 15 feet" including one place where the road was 44 feet wide. Id. However, in a later case, *Scarboro v. Edenfield*, 58 Ga. App. 619, 619 (2) (a) (199 SE 325) (1938), this Court found that despite "some detours made from the original road" the prescribers, unlike those in *Follendore*, supra, were not "claiming a right to use an area which would include land

10

involved in the detours, but only the original road not exceeding fifteen feet in width."

Pretermitting whether the existence of a few wider places in the roadway will or will not defeat the rights of prescriptive users, *Jackson*, supra, a crucial part of the analysis remains the width of the roadway. In this instance, questions remain on the width of the roadway where any shifting to avoid holes occurred, and whether that width exceeded or remained within the statutory width parameters of the roadway as originally laid out and claimed. Thus, summary judgment was inappropriate.

3. Griffin, again citing to Davidson's affidavit, contends that a genuine issue of material fact exists as to whether Timberlands kept the roadway in repair during the prescribed period.

To establish prescriptive title, the prescriber must keep the roadway "open and in repair" during the prescriptive period. (Citation and punctuation omitted.) *Eileen B. White & Assocs., Inc. v. Gunnells*, 263 Ga. 360, 360 (434 SE2d 477) (1993).

Timberlands provided affidavits showing that it spent more than $2,200.00 on multiple repairs to the road between 2000 and mid-2011, using heavy machinery to grade, clear, and brush out the road so that trucks could travel across it.

11

Davidson, by contrast, testified that the road "was somewhat in existence but was in bad repair and was very difficult to travel because it stayed washed out and contained many deep holes." He also testified that his hunting club "used the road from time to time." Thus, there is no factual dispute as to whether the road was open and usable, despite what may have been a less-than-ideal level of repair. See id. at 361.

However, it is well settled that "[t]he gist of the requirement as to repairs is not so much the repairs as the *notice* which is given by the repairs. Moreover, use alone is insufficient to acquire prescriptive title." (Citations and punctuation omitted; emphasis in original.) *Rothberg*, supra at 781 (2); accord *Eileen B. White*, supra at 360-362. We have held that even where a landowner claimed he did not notice any repairs being made, because "there was testimony to the effect that the repairs were extensive enough to put the owner on notice that others were using the road[,]" the evidence was sufficient to support a prescriptive easement. *Ga. Pacific Corp. v. Johns*, 204 Ga. App. 594, 594 (420 SE2d 39) (1992). Because Griffin does not contest the issue of notice on appeal, we cannot say that the trial court erred.

Nonetheless, Timberlands overall still has failed to meet the requirements for summary judgment as to its claim of prescriptive easement.

4. Given our determinations in Divisions 1, 2, and 3, we need not reach Griffin's remaining contention of error.

*Judgment reversed. Andrews, P. J., and McFadden, J., concur.*